(70 Misc. Rep. 385.)

## LAUDANI et al. v. VULCAN ENGINEERING CO. et al.

(Supreme Court, Special Term, Albany County. January, 1911.)

1. STATES (§ 108½*)—CONSTRUCTION CONTRACTS—RIGHTS OF SUBCONTRACTORS.

Where a contractor under a barge canal contract defaulted, and the state relet the work at a higher price, the state owes no obligation to persons filing liens against the original contractor to collect from such contractor's surety on his bond the increased cost of the work, and to reserve the sum withheld from the amount earned by the original contractor as security for completion of his contract, to be applied to payment of such liens, but the state should reduce the liability of the surety by applying the amount so withheld to the reduction of the increased cost of the work.

[Ed. Note.—For other cases, see States, Dec. Dig. § 108½.*]

2. STATES (§ 101*)—CONTRACTS—CONSTRUCTION OF BONDS.

Where the bond of the surety of a contractor under a barge canal contract, such canal being a highway outside of cities and villages, contained among the conditions in the printed form on which it was executed, a provision that the wages of laborers of the contractor should

be paid, but no law required the insertion of such a provision, and such provision was designed to relate to contracts for construction of streets in cities and villages, and not to contracts for highways outside cities and villages, and had been stricken out of the contract, which was also drawn on a blank form, it will be presumed that the parties intended such provision to be stricken from the bond, and it will not be considered a part of the contract.

[Ed. Note.—For other cases, see States, Cent. Dig. § 98; Dec. Dig. § 101.*]

Action by Alphio Laudani and others against the Vulcan Engineering Company and others. Judgment rendered.

Action to foreclose the mechanics' liens of various Italian laborers, who were employed on good roads contract No. 456. The contract upon which the labor was performed by the plaintiffs and some of the defendant laborers was one to improve the Little Falls-East Creek road, from the city line of Little Falls easterly along the north side of the Mohawk river to the Montgomery county line at East creek, a distance of 5.39 miles in the town of Manheim, Herkimer county, N. Y.

The state of New York prepared specifications, proposal, contract, and bond for the benefit of proposing contractors. The contract was originally let to U. G. Stockwell of Albany, N. Y., July 19, 1906. The contract price of the work was $48,949. The contractor and the indemnity company executed the bond required by the state to be executed. After the contract was awarded with the consent of the state and the indemnity company, the contract was assigned to the defendant Vulcan Engineering Company, on April 20, 1907, which latter company undertook the prosecution of the work. It proceeded with the work until November, 1907, when it abandoned the contract.

Under the terms of the contract, 10 per cent. of the amount earned upon it was authorized to be deducted and withheld by the state authorities from the amount of the monthly estimates up to the time when the contractor failed to continue in the execution of the work. The amount so retained was between $2,000 and $3,000. A few hundred dollars' worth of work in addition seems to have been done, for which no certificate was made, and the amount of which was never paid to the Vulcan Engineering Company. When the Vulcan Engineering Company abandoned the contract, it was relet by the state and completed by James Walker. There appears to be no controversy as to the propriety of this reletting under the terms of the contract, and the total cost of the work when completed largely exceeded the original contract price, and the damage sustained was more than sufficient to absorb the 10 per cent. deductions withheld by the state, and any sum in addition which might have been due the Vulcan Engineering Company beyond the amount withheld.

The plaintiffs, who are laborers, and the defendants, laborers and materialmen, filed liens under the provisions of statute, which are claimed to attach to the funds withheld by the state, and to give them a right of action against the state to the amount unpaid for work done by the Vulcan Engineering Company. The laborers, parties to this action, further claim that in the event of not being able to reach by their liens the funds which were withheld by the state they have a right of action against the defendant Ætna Indemnity Company to make good the deficiency, because of certain provisions in the bond of the original contractor executed by the indemnity company. The state claims that no part of these moneys retained by it is by reason of the breach of the Vulcan Engineering Company's contract and the damage which it has sustained thereby subject to any lien in favor of laborers or materialmen on the work.

It is conceded that all liens were filed within the time prescribed by law and with the proper officers.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Countryman, Nellis & Du Bois (Pierre E. Du Bois, of counsel), for plaintiffs.

Peter A. Delaney, for defendant Vulcan Engineering Company.

Edward R. O'Malley, Atty. Gen. (Edward A. Gifford, Deputy Atty. Gen., of counsel), for defendant State of New York.

Robert F. Wilkinson (William S. Rhodes, of counsel), for defendant Little Falls Stone Company.

William S. Rhodes, for defendants, Little, Valley Mills Company, Sanders, Cool, Youker, Ritter, Harris, and Perry.

J. L. Moore, for defendant Leavenworth.

William E. Woollard, for defendant Fay.

Brownell & Tilden (H. Wilson, Jr., of counsel), for defendant Clow.

LE BOEUF, J. [1] The original contract provided that, in case of default in the performance of the contract by the contractor (which would include his assignee), the contract might be relet, or might be completed by the state, and that the state engineer might pay "for such contract or completion from any moneys due or to become due under this contract; and, in case such expense shall exceed the amount due or to become due the contractor on the final completion of the work herein embraced, then it is expressly understood and agreed that the said contractor and his surety shall be jointly and severally liable for such excess."

It appears conceded that the state properly relet this contract. It is also conceded that the result of this reletting was the payment of a large amount in excess of the original contract price. For this damage so sustained the Vulcan Engineering Company was responsible to the state. It is elementary that as between the two no recovery whatever could have been had by the engineering company against the state upon the theory that the state owed it any sum of money for the work already performed on the contract. Under the authorities, therefore, there was nothing to which the liens of the various laborers could thus attach. Van Clief v. Van Vechten, 130 N. Y. 571, 29 N. E. 1017; Brainard v. County of Kings, 155 N. Y. 538, 50 N. E. 263.

Viewed from the standpoint of the ordinary situation of principal and surety, the state was under no obligation whatever to hold the fund for the benefit of the lienors and proceed against the surety to recoup its damage. Indeed, apart from the question which is raised as to the peculiar provision of the bond in favor of employés, the duty of the state was to lessen the liability of the indemnity company rather than to increase it. It must follow, therefore, that, so far as the state of New York was concerned, the liens of the lienor attach to no fund, and no foreclosure of the mechanics' liens as against the funds withheld by the state can be allowed in this action.

[2] The plaintiffs, however, insist that, if no foreclosure of their liens may be permitted by law, they have the right to recover the amount of their claims against the Ætna Indemnity Company. The bond provides as follows:

"If the above bounden principal, his heirs, executors or administrators or assigns, shall and do well and truly pay or cause to be paid in full the wages stipulated and agreed to be paid to each and every laborer employed by the

said principal or by his agents, then this obligation shall be null and void, otherwise to remain in full force and virtue."

It is conceded by all parties that no provision of statute existed which authorized or required this provision to be inserted in the bond. The Ætna Indemnity Company asserts that it was placed in the bond by sheer inadvertence. No proof is given as to this inadvertence.

The proposals, estimates, specifications, contract, and bond comprise the bound printed book which appears to have been delivered at the outset to intending proposers for the contract. In the "Information for Proposers," with which this book starts, it is stated that:

"The person or persons whose proposal is accepted will be required to execute the contract and furnish bonds within ten days."

"The amount of bond required *for the faithful performance of the contract* is fifty per centum (50 per cent.) of the amount of the contract price."

"On the faithful performance of the work herein embraced," the contractor is by the contract entitled to receive the full consideration expressed in the contract. So far as these provisions are concerned, they seem to solely relate to the performance of the work, and not to any collateral agreement, such as one to pay the wages of employés.

There appears upon the face of the contract, however, something which was not referred to by any of the parties plaintiff or defendant in the course of the trial.

In the printed conditions of the contract on page 37 there appears the following:

"The contractor further agrees that each laborer, workman or mechanic employed by such contractor, or by any subcontractor or any other person, on, about or upon the work herein contracted to be done, shall receive not less than the prevailing rate for a day's work in the same trade or occupation in the locality within the state where such public work, on, about or in connection with such labor is performed in its final or completed form is to be situated, erected or used; *and that this contract shall be void and of no effect unless the said contractor shall comply with the foregoing provision.*"

Stamped across the face of this section and another section which referred to an eight-hour day for laborers, there appears the following:

"These two paragraphs are not applicable to highways outside the limits of a city or incorporated village. See section 18, chapter 468, Laws of 1906, and section 3 of the Labor Law, as amended by chapter 506, Laws of 1906."

While no testimony was given as to this fact, nor reference made to it by the parties, it would seem that the intention of the stamping of this legend upon these two printed provisions of the contract was to strike them out and make them wholly inapplicable. If this were true, they absolutely ceased to be a part of the contract. The description contained at the commencement of the contract shows a road running from the city line of Little Falls through a portion of country, in a town, and which from the face of the agreement does not appear to be part of an incorporated city or village. Indeed, the court might take judicial notice of the geographical situation.

Referring then to the bond, the words "to be paid in full the wages stipulated and agreed to be paid to each and every laborer," in the

absence of any other statute, appear to have referred to the printed prevailing rate of wages clause which had been stricken out of the contract. If those provisions had remained in the contract, the contractor would have stipulated and agreed that he would pay not less than the prevailing rate of wages; and, if special reference was to be made to this agreement in the bond, the words on which these plaintiffs now rely might reasonably have referred to such purpose. If this were the intention, the condition in the contract having been stricken out, no force could be given to the provision in the bond referring to the provision so stricken out. It appears to me that this was the real inadvertence under which the provision now relied upon was actually inserted in the bond. The stipulation as to wages being stricken out of the contract, the promise of the bond on the same subject became inoperative. Inasmuch as the parties, however, do not specifically point this out, the plaintiffs' able brief makes it necessary to consider this provision of the bond entirely, irrespective of the provision stricken from the contract.

It is claimed that this is an agreement on the part of the indemnity company to pay the claims of the laborers, and that under the rule laid down in Lawrence v. Fox, 20 N. Y. 268, that agreement can be directly enforced against the indemnity company. This claim appears to me to be untenable. Probably no decision of the highest court of this state has been the subject of more consideration than that in Lawrence v. Fox. The rule which was there established is still enforced, but strictly within the limitations embraced by that and many later decisions. Without attempting to analyze these many decisions, the limitations within which this rule shall be enforced are well stated in Vrooman v. Turner, 69 N. Y. 280, 25 Am. Rep. 195, per Allen, J., all concurring except Earl, J.:

"To give a third party who may derive a benefit from the performance of the promise an action, there must be, first, an intent by the promisee to secure some benefit to the third party; and, second, some privity between the two, the promisee and the party to be benefited, and some obligation or duty owing from the former to the latter which would give him a legal or equitable claim to the benefit of the promise, or an equivalent from him personally. "It is true there need be no privity between the promisor and the party claiming the benefit of the undertaking, neither is it necessary that the latter should be privy to the consideration of the promise, but it does not follow that a mere volunteer can avail himself of it. A legal obligation or duty of the promisee to him will so connect him with the transaction as to be a substitute for any privity with the promisor, or the consideration of the promise, the obligation of the promisee furnishing an evidence of the intent of the latter to benefit him, and creating a privity by substitution with the promisor. * * * "In the language of Judge Rapallo, 'to entitle him to an action, the contract must have been made for his benefit. He must be the party intended to be benefited.'"

Now it may well be doubted, in view of the striking out of the provisions of the contract as to prevailing rate of wages, if there was any intent whatever on the part of the promisee in the bond, the state of New York, "to secure some benefit to the third party." If, however, that may be assumed, privity between the state and the laborers must be shown. That privity is dependent upon some obligation or duty

owing from the former to the latter which would give the laborers a legal or equitable claim to the benefit of the promise.

It is apparent at the outset that the state was absolutely under no obligation to these workmen when this bond was executed. The contract itself, striking out the stipulated wages clause, showed no interest whatever in the laborers. The matter for which the state of New York was contracting was the improvement of a road. That was the sole object of its solicitude. If liens were filed by these laborers, their claims as such under ordinary circumstances could not take precedence over the claim of the state to be protected by procuring the performance of the contract for the stipulated contract price.

It is claimed, however, that, while viewed as a strict legal obligation, there was no obligation, yet there was one of a peculiar character raised by the relation of the parties to the state. It is said that these workmen were part of the state, that they are the peculiar objects of the state's solicitude, and that, therefore, a duty existed to them within this rule. Several cases on this question of obligation or duty are cited and relied upon by the plaintiffs. In their examination, it must be constantly borne in mind that in this case the object to be attained by the state of New York was to procure the faithful performance of the work of improving a road. The real object of any bond at all was to secure that faithful performance.

In Coster v. Mayor of Albany, 43 N. Y. 399, it was held that the plaintiff could enforce an agreement by the city of Albany with the state of New York to assume the payment of certain damages caused by the making of a public improvement. It appeared that authority existed for the making of this contract in a statute which had been passed by the state. It further appeared that, under the laws as they then existed, private property could not be taken without just compensation. While it was the fact that the state was a sovereign power and could not be sued without its consent, its agents might be sued and enjoined. The damages which might be sustained by the performance of this public improvement were those for which a valid claim could exist against the state of New York, even though it might be the fact that the remedy to enforce that claim did not exist at law. Moreover, it appeared that the contract sued on was made for the express purpose of relieving the state from this very obligation from which it sought to be freed. Here, therefore, was not only a clear legal duty, made out on the part of the state to the persons who might be damaged, but it is apparent that the contract was drawn for the express purpose of freeing the state from any obligation thereon.

In Little v. Banks, 85 N. Y. 258, a statute passed by the state was held to authorize the making of a contract containing the condition upon which the action was predicated. That statute provided that the reports should be published "by contract * * * to be entered into * * * with the person or persons who * * * shall agree to publish and sell" the said reports therein mentioned *on terms the most advantageous to the public.* It was held that under the statute the state had the right to insert in the contract a provision requiring the contractor to sell to other booksellers. Such a contract was held enforceable by the person for whose benefit it was made. It was

claimed in this case that the specific subject-matter of the contract was included in the condition upon which the suit was brought. It is clear that a duty existed, and that the provisions of the contract were actually authorized by a specific statute.

The plaintiffs next rely on Embler v. Hartford Steam Boiler Insurance Co., 158 N. Y. 431, 53 N. E. 212, 44 L. R. A. 512. In that case the personal representative of the employé of the pulp company had brought an action against that company for the alleged negligent killing of plaintiff's intestate as the result of a boiler explosion. Before that action was tried, a settlement was made and release given for $1,500. The pulp company had insured itself with the insurance company against loss or damage to property resulting from explosion of steam boilers, and also "against loss of human life or injury to person, whether to the assured, to employés, or to any other person or persons, caused by such explosion or rupture, payable to the assured *for the benefit of the injured person or persons, or their legal representatives in case of death;* and not contingent upon the legal liability of the assured." The amount of any recovery under this clause was $5,000. The personal representatives, having settled with the pulp company, brought an action on this contract under the rule of Lawrence v. Fox. Judge Gray held that, whatever the intention of the parties was, the promisee had no legal interest that the contract be performed in favor of the employé. The only obligation or duty between them consisted in the duty owed by the employer to an employé for any breach of which the law gave a right of action which had already been availed of by the personal representatives. The four judges who concurred with Judge Gray, however, held that this contract "was at most intended as a pecuniary indemnity to the legal representatives of the deceased employé for the loss sustained by them in consequence of his death, and that but one recovery is permitted, whether the death was caused through negligence or unavoidable accident."

In this case there is no question but that the employer owed a duty to his employés then employed or to be thereafter employed. It is true that at that time its legal liability to such an employé would rest only upon a finding of its negligence—a failure to furnish a reasonably safe place in which to work, and the various other duties which an employer owed at that time to an employé. But it was apparently in the mind of the pulp company that there might be cases where there would be a fine line of distinction between its negligence and unavoidable accident. Claims might be made against it for deaths where, though it might be finally determined it was not legally liable, it proposed to have the benefit of an insurance with an insurance company which would bear the brunt of both the investigation and the final settlement of such a claim. The four concurring judges themselves did not apparently intend that the doctrine of this case should be carried beyond the facts involved. A clear distinction exists between the case from the standpoint of the four concurring judges and the one at bar.

It is in the fact that in the pulp company's case the very subject-matter of the contract which it made with the indemnity company was to procure insurance against loss, which, while payable to it, was pay-

able in terms for the direct "benefit of the injured person or persons or their legal representatives in case of death, and not contingent upon the legal liability of the assured." No such situation exists in the case at bar.

The same line of distinction can be drawn in the case of Pond v. New Rochelle Water Co., 183 N. Y. 330, 76 N. E. 211, 1 L. R. A. (N. S.) 958, although other distinctions equally exist. There the defendant was a municipal corporation. It entered into a contract with a water company for the delivery to the village of water through hydrants for the extinguishment of fires and for other public purposes. It added to the terms of the contract a provision that the water company would supply private consumers and corporations for a term of years with pure and wholesome water at a rate per annum, not exceeding a designated amount. The successor of the water company notified private consumers, residents of the village, that after a certain date no water would be furnished except through meters, and at rates largely in excess of those fixed by the contract. It was held that such resident might maintain an action for permanent injunction restraining the company from enforcing collection of the water rate in excess of that fixed by the contract. With reference to the duty which the municipal corporation owed to the plaintiff, resident of the village, the court says:

"In the case before us we have a municipality entering into a contract for the benefit of its inhabitants; the object being to supply them with pure and wholesome water at reasonable rates. While there is not presented a domestic relation like that of father and child or husband and wife, yet it cannot be said that this contract was made for the benefit of a stranger. In the case before us the municipality sought to protect its inhabitants, who were at the time of the execution of the contract consumers of water, and those who might thereafter become so, from extortion by a corporation having granted to it a valuable franchise extending over a long period of time."

It may be said as to this case that the duty to the inhabitants of this corporation which was then pointed out may be found in section 81 of the transportation corporations law (Consol. Laws, c. 63). There the municipal corporation was given the right to permit this water company to lay conduits in the ground. Manifestly, if the sole purpose to be subserved was to procure a supply of water for the extinguishment of fires and for sanitary and public purposes alone, such a privilege would be of little value to the water company. That section provided in terms that such a corporation should not only supply the authorities, but "any of the inhabitants of any * * * village through which the conduits or mains of such corporation may pass * * * with pure and wholesome water at reasonable rates and cost."

When, therefore, the board of trustees of the village added these terms to the contract, it may well be said that they contracted with reference to the duty which they owed to the residents of that village to protect them in procuring what the statute required "pure and wholesome water at reasonable rates and cost."

The authorities cited on this proposition by one of the defendants are equally to be distinguished. These are Sullivan v. Staten Island

El. R. Co., 50 App. Div. 558, 64 N. Y. Supp. 91; Woodward v. Mutual Reserve Life Ins. Co., 178 N. Y. 485, 71 N. E. 10, 102 Am. St. Rep. 519. In all the cases cited the condition deemed enforceable in favor of a third person was one directly connected with the main purpose which the contract was intended to subserve. Where official action was involved, the authority for such action was directly conferred, or a statute was involved broad enough in its terms to make the provision of the contract reasonably within the powers of the officials making it.

Here no statute other than the one shown to be inapplicable requires or authorizes the insertion of this provision in the bond. The provision is not one in which the indemnity company directly agrees to pay the wages stipulated, but instead appears to be one intended to indemnify the state. The state would run no legal danger whatever of loss in this regard. It is not liable to the laborers for their wages. Its rights are superior to any liens which they may impose upon the amount due the contractor. To give this term in the bond any effect will be to hold substantially that, though nothing was said in the contract on this subject, the state by taking this bond put itself in the position where it could not claim the rights of an individual on a broken contract as to sums of money properly withheld from the contractor. A liability would, therefore, be created as against the state, and this liability so created would be upon the theory that the state owed not a legal or equitable obligation to the laborers employed on this contract, but a duty based solely upon the regard which it might have for its citizens. This proposition does not appear to me to be tenable.

To hold the Ætna Indemnity Company liable to these plaintiffs upon any such theory would be an extension of the rule of Lawrence v. Fox beyond the limits which have been placed upon it. It is undoubtedly true that the plaintiffs were entitled to receive their full compensation, but that fact conceded would not permit this court to exact such payment from defendants who were neither liable at law nor in equity. The plaintiffs have failed to make out a cause of action against the state of New York as well as the defendant Ætna Indemnity Company.

The defendants claiming a cause of action against the state and against the Ætna Indemnity Company have equally failed in their contention.

The defendants state of New York and Ætna Indemnity Company are entitled to judgment dismissing the complaint against them upon the merits; but, under the circumstances of this case, no costs will be allowed as against the plaintiffs or defendants making such claim.

Final decision may be prepared in accordance with this opinion.

Judgment accordingly.