UPSON et al. v. UNITED ENGINEERING & CONTRACTING CO. et al.

(Supreme Court, Equity Term, Niagara County. July, 1911.)

1. MECHANICS' LIENS (§ 102*)—RIGHT TO LIEN—CONTRACT.
    The right of laborers and materialmen to liens for the improvement of real property is regulated by the contract, and whether any fund exists to which the liens attach is dependent upon its provisions.
    [Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 134; Dec. Dig. § 102.*]

2. MUNICIPAL CORPORATIONS (§ 373*) — PUBLIC IMPROVEMENTS—RIGHT TO LIEN.
    Persons furnishing labor or materials to the subcontractor under a contract for a public improvement have a right to inspect the subcontract and are chargeable with notice of its contents and with knowledge of their rights thereunder as against the contractor.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. § 373.*]

3. MECHANICS' LIENS (§ 102*)—RIGHT TO LIEN.
    Under the lien law, right to a laborer's or mechanic's lien depends upon something being or becoming due to the contractor or subcontractor on whose credit the labor or materials are furnished under his contract.
    [Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 134; Dec. Dig. § 102.*]

4. MUNICIPAL CORPORATIONS (§ 373*)—PUBLIC IMPROVEMENTS—RIGHT TO LIEN.
    The right to liens under a contract for public improvements is governed by the same rule as liens for the improvement of real property.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. § 373.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. MECHANICS' LIENS (§ 164*)—AMOUNT.

Mechanics' lienors are entitled to such sums as the contractor under whom they claimed was, at the time of filing their notices of lien, or might afterward become, entitled to receive under his contract.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 285–296; Dec. Dig. § 164.*]

6. MECHANICS' LIENS (§ 279*)—ENFORCEMENT—BURDEN OF PROOF.

Mechanics' lienors, claiming under a subcontractor, have the burden to prove the amount due him when they filed their notices of lien and thereafter accruing.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 555, 556; Dec. Dig. § 279.*]

7. MECHANICS' LIENS (§ 112*)—FUNDS SUBJECT TO.

The right of mechanics' lienors, claiming under a subcontractor, to reach funds retained to secure the contractor from loss through the subcontract's default, depends upon substantial performance of the subcontract.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 147; Dec. Dig. § 112.*]

8. MECHANICS' LIENS (§ 279*)—RIGHTS OF LIENORS—PRESUMPTIONS.

As affecting the rights of mechanics' lienors, claiming under a subcontractor who abandoned the work, it cannot be presumed that the work can be completed for the subcontract price.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 555, 556; Dec. Dig. § 279.*]

9. MECHANICS' LIENS (§ 240*)—PAYMENT BY CONTRACTOR TO LIENORS CLAIMING UNDER SUBCONTRACTOR.

Under a contract binding the contractor to see that all workmen employed by him or by any subcontractor are paid, the contractor, as affecting the rights of mechanics' lienors claiming under the subcontractor, who abandoned the work, has the right to apply funds due the subcontractor to payment of the latter's laborers.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 422; Dec. Dig. § 240.*]

10. MECHANICS' LIENS (§ 128*)—RIGHT TO LIEN.

Materialmen and workmen have no lien upon or equity in money due or paid under a building contract until they have filed their lien as required by the lien law.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 177; Dec. Dig. § 128.*]

11. MUNICIPAL CORPORATIONS (§ 373*)—PUBLIC IMPROVEMENTS—LIENS.

Lien Law (Consol. Laws 1909, c. 33) § 21, subd. 4, providing for discharge of liens on the amount due a contractor for a public improvement by a deposit, does not entitle lienors to payment of personal judgments against a subcontractor on account of a deposit by the contractor, without their establishing a lien against the primary fund.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. § 373.*]

12. MUNICIPAL CORPORATIONS (§ 373*)—PUBLIC IMPROVEMENTS—LIENS.

Under Lien Law (Consol. Laws 1909, c. 33) § 21, subd. 5, providing for discharge of a lien on the amount due a contractor for a public improvement by undertaking to pay any judgment enforcing the lien, a contractor is not liable under such undertaking for a personal judgment against a subcontractor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. § 373.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by William H. Upson and another against the United Engineering & Contracting Company and others. Decision directed.

William W. Storrs, for plaintiffs.

Philbin, Beekman, Menken & Griscom (Stephen P. Anderton and David Tice, of counsel) for defendant United Engineering & Contracting Co.

James M. E. O'Grady (F. P. Kimball, of counsel), for defendant Rochester Construction Co.

Hopkins & Brim, for defendant Rounds.

Judson, Holley & Caton, for defendants Kugler Bros. and Rochester Rubber Co.

Thomas E. Lawrence, for defendants J. Bert Ross and Widnoon Coal Mining Co.

Edward R. O'Malley, for defendants People of the State of New York and State Comptroller.

Moot, Sprague, Brownell & Marcy (D. B. Hellings, of counsel), for defendant Erie Railroad Co.

Kenefick, Cooke, Mitchell & Bass (Thomas R. Wheeler, of counsel), for defendant Standard Oil Co.

Stockwell & Campbell, for defendant Western Block Co.

Love & Keating, for defendant United States Fidelity & Guaranty Co.

T. J. Nigham, for defendant Union Oil Works.

C. L. Nicholls, for defendant McKim.

Roy H. Ernest, for defendants Charles C. Ross and Fred F. Ross.

POUND, J. The defendant United Engineering & Contracting Company, on or about November 27, 1908, entered into a contract known as contract No. 40, § 10, with the people of the state of New York, for the improvement of the Erie Canal from Lockport to Sulphur Springs Guard Lock, a distance of 4.84 miles, for the sum of $2,166,298.

The defendant Rochester Construction Company, on or about July 17, 1909, entered into a subcontract with defendant United Engineering & Contracting Company, whereby the Rochester Company undertook to do the excavation, channeling, and embankment work required by the principal contract, between stations Nos. 5,926 and 5,952, extending a distance of 2,600 feet west from Hitchens Bridge.

The Rochester Company entered upon the performance of the subcontract, and prosecuted the same until on or about February 5, 1910, when it ceased work thereunder and abandoned same.

On February 7, 1910, the plaintiff Upson verified a notice of lien in the sum of $503.40 and interest, for coal furnished the Rochester Company on its subcontract, and filed same in the office of the superintendent of public works, the state engineer and surveyor, and the comptroller, on February 9, 1910.

On February 8, 1910, plaintiff McGrath verified a notice of lien in the sum of $858.23 and interest, for lumber and timber furnished the Rochester Company on its subcontract, and filed same in said last above named offices on February 9, 1910.

Various defendants filed liens at the times, in the amounts, for services and materials furnished the Rochester Company on the subcontract as follows:

| Name | Date | Amount | Material |
|------|------|--------|----------|
| Bonaparte Rounds | Feb. 9, 1910 | $566.00 | lumber & timber |
| Daniel G. McKim | " 11, " | 205.95 | machine work, etc. |
| Dussault Foundry Works | " 14, " | 57.25 | |
| Kugler Brothers | " " " | 28.75 | |
| J. Bert Ross | " 21, " | 446.58 | coal |
| Widnoon Coal Mining Co. | " 25, " | 137.01 | coal |
| Rochester Rubber Co. | Mar. 3, " | 191.22 | rubber goods |
| Erie Railroad Co. | " 16, " | 615.33 | freight |
| Union Oil Works | " 21, " | 109.91 | oils |
| Standard Oil Co. | " 29, " | 98.93 | oils |
| Charles C. Ross | " " " | 105.25 | teaming |
| Fred Ross | " " " | 395.50 | teaming |
| Western Block Co. | Apr. 1, | 74.38 | blocks, etc. |
| **Total** | | **$3,032.06** | |

The claims of Dussault Foundry Works and Kugler Bros. were paid subsequent to the commencement of this action.

The United Company, pursuant to section 21 of the lien law (Consol. Laws 1909, c. 33), subd. 4, deposited with the Comptroller the following amounts, on the following dates, on the following liens, to obtain discharge of the same, viz.:

| Lien | Date | Amount |
|------|------|--------|
| McGrath | Feb. 23, 1910 | $1,109.73 |
| Upson | " | 683.60 |
| Rounds | " | 749.96 |
| McKim | " | 318.31 |
| Dussault | " | 95.69 |
| Kugler | " | 55.48 |
| Union Oil Works | Mch. 22, 1910 | 200.00 |

And gave undertakings, with the United States Fidelity & Guaranty Company as surety, to secure discharge of the following liens, pursuant to section 21 of the lien law, subd. 5:

| Lien | Date |
|------|------|
| Widnoon Coal Mining Co. | March 18, 1910 |
| Rochester Rubber Co. | " " |
| Erie Railroad Co. | " " |
| J. Bert Ross | " 25, " |
| Standard Oil Co. | April 16, " |
| Charles C. Ross | " 11, " |
| Fred Ross | " " " |
| Western Block Co. | " 16, " |

The other material facts are hereinafter stated and are not in dispute.

[1] The right of laborers and materialmen to liens for the improvement of real property is regulated by the terms of the contract, and whether any fund exists to which the liens attach is dependent upon its provisions. Larkin v. McMullin, 120 N. Y. 206, 24 N. E. 447.

[2] All persons furnishing labor or materials to the subcontractor under a contract for a public improvement have a right to inspect the subcontract and are chargeable with notice of its contents and

with knowledge of their rights thereunder as against the claims of the contractor.

But it is contended, on the outset, that there is a distinction between liens for the improvement of real property under section 4 of the lien law and liens for public improvements under section 5 of the lien law, and that the lienors herein have a lien on the funds due the principal contractor from the state regardless of whether any moneys are due from the contractor to the subcontractor.

Section 5 of the lien law reads as follows:

"Sec. 5. Liens under contracts for public improvements. A person performing labor for or furnishing materials to a contractor, *his subcontractor* or legal representative, for the construction of a public improvement pursuant to *a contract by such contractor with the state* or a municipal corporation, shall have a lien for the principal and interest of the value or agreed price of such labor or materials upon the moneys of the state or of such corporation applicable to the construction of such improvement, *to the extent of the amount due or to become due on such contract,* upon filing a notice of lien as prescribed in this article."

One contract alone is mentioned in the section, and that is the contract "by such contractor with the state." If the language is taken literally, the lien attaches to the amount due on *that* contract in favor of a person performing labor for or furnishing materials to a subcontractor. It would follow that the contractor who had paid his subcontractor in full might also be compelled to satisfy subsequent liens filed by the subcontractor's laborers and materialmen.

The power of the Legislature to provide for a direct mechanic's lien, independent of the indebtedness between owner and contractor, or between contractor and subcontractor, has been seriously questioned, although generally upheld. Jones v. Hotel Co., 86 Fed. 370, 30 C. C. A. 108, reversed on other grounds, 177 U. S. 449, 20 Sup. Ct. 690, 44 L. Ed. 832, and see same case, 116 Fed. 793, 54 C. C. A. 165.

[3] Under the lien law in force in New York, it has, however, been uniformly held that the right to a lien is dependent upon something being due or becoming due to the contractor or subcontractor on whose credit the labor and materials are furnished under his contract.

The rule is well stated by Grover, J., as follows:

"A party furnishing materials or doing work, relying upon the lien given by statute for security, must examine the contract with the owner; for it is only to the extent of what is due or to become due upon this contract that his lien can attach. If he furnishes the material or does the work for a subcontractor, in like reliance he should not only examine the contract with the owner, but also that of the subcontractor; for if the subcontractor fails to perform his contract so that nothing becomes payable thereon, or is paid in full according to its terms in case of performance, there can be no lien. There is no reason for protecting an owner against a lien who has paid the contractor in full pursuant to the contract, not equally applicable to a contractor, who in like manner has paid his subcontractor. It would be equally unjust to compel a contractor to pay again through the enforcement of a lien as it would be owner. It is no more essential to the security of materialmen and laborers in the one case than in the other." Lumbard v. Syracuse, etc., R. Co., 55 N. Y. 491, 494; French v. Bauer, 134 N. Y. 548, 32 N. E. 77, 2( L. R. A. 560.

[4] I find no reported case in which it has not been assumed that the same rule applied to liens under contracts for public improvements as to liens for the improvement of real property. While the question is not very plainly stated in Wright v. Schoharie Valley Railway Co., 116 App. Div. 542, 101 N. Y. Supp. 801, affirmed 191 N. Y. 549, 85 N. E. 1118, it is there squarely held that liens for material furnished to the subcontractor on a public improvement can be enforced only to the extent of the moneys found to be due to him from the contractor. This rule is in accord with the established policy of the state and is controlling here. An unprofitable contract or subcontract for a public improvement becomes a dubious security for materialmen.

It follows that the main question here presented for decision is to what extent the liens as filed attached to the moneys earned by the subcontractor and unpaid.

"The following rules *determine* the extent to which a mechanic's lien, filed by a subcontractor or a materialman, attaches to the locus in quo: (1) If anything is due to the contractor, pursuant to the terms of the contract, when the lien is filed, it attaches to that extent. (2) If nothing is due to the contractor according to the contract, when the lien is filed, but a certain amount subsequently becomes due thereunder, the lien attaches to the extent of that sum. (3) If nothing is due to the contractor pursuant to the contract, when the lien is filed and he abandons the undertaking without just cause, but the owner completes the building according to the contract and under a provision thereof permitting it, *the lien attaches to the extent of the difference between the cost of completion and the amount unpaid when the lien was filed.*" Van Clief v. Van Vechten, 130 N. Y. 571, 577, 29 N. E. 1017; Wexler v. Rust, 128 N. Y. Supp. 977, 980.

[5] Lienors are entitled, by virtue of their liens, to such sums as the subcontractor was, at the time of filing their notices of lien, or might afterwards become, entitled to receive under its contract, but no more. Rodbourn v. S. L. Grape & Wine Co., 67 N. Y. 215, 217.

[6] The lienors have the burden of proof on this question. Brainard v. County of Kings, 155 N. Y. 538, 50 N. E. 263.

The question of advance payments in bad faith was not pleaded nor litigated and is not in the case. Hudson River Blue Stone Co. v. Huntington, 143 App. Div. 99, 128 N. Y. Supp. 25.

[7] The prices, so far as material, under the subcontract, were as follows:

Excavation, 85 cents per cubic yard.

Channeling, 18 cents per square foot.

By the terms of the subcontract, estimates were made monthly under the principal contract of the work done by the subcontractor. The contractor was paid on these monthly estimates about the 20th of the month following. Within three days after the contractor was paid by the state for the work done under the subcontract, it made partial payments to the subcontractor as follows:

Rock excavation above water line, 70 cents per cubic yard.

Rock excavation below water line, 86½ cents per cubic yard.

Channeling, 18 cents per square foot.

The balance was to be retained by the contractor until *"sixty days after the last of the preliminary payments is made by the state to the contractor for all work done"* by the subcontractor.

Nothing whatever is due from the contractor until three days after it paid by the state for the work of the preceding month, and nothing is due from these retained earnings of the subcontractor until the final completion of the work in accordance with the terms of the subcontract, and the lienors of the subcontractor can have no other or different claim thereto than the subcontractor would have. The admissions in the monthly statements from contractor to subcontractor that sums were due as of the first of the month were contrary to the contract and to the facts and constitute no estoppel.

The sums retained were to secure the contractor from loss by the subcontractor's default, and the right to demand the same by any one depended upon the substantial performance of the subcontract. Kelly v. Bloomingdale, 139 N. Y. 343, 34 N. E. 919.

The total sum earned by the subcontractor as certified amounted to $21,639.75. On this has been paid, prior to the filing of the first lien on February 9, 1910, $17,398.43. Leaving earned and unpaid, $4,241.32. Of which there was to become due on or about February 23, 1910, or three days after the contractor was paid on the January estimate (except $129.60, which became due on the February estimate), $766.87. The balance to be retained until 60 days after the last preliminary payment by the state to the contractor for all work done by the subcontractor, $3,474.45. From the total sum earned should be deducted the sum of $417.35, and from the present payments the sum of $291.56, by reason of errors in the monthly estimates of work done on account of spoil certified as placed on the bank but actually dropped in the canal by the subcontractor.

Under the terms of the subcontract, the contractor gave 10 days' notice to the subcontractor on February 9, 1910, declaring it to be in default. It thereupon acquired the right to "forthwith procure by contract or otherwise the completion of the work, and may, to the extent of such cost of completion and interest thereon, withhold and apply thereon *any and all moneys otherwise due or to become due to the subcontractor."*

[8] The contractor's right to withhold moneys due and to become due therefore vested on February 19, 1910, and, as nothing was *due and unpaid* on that date, there was no fund to which the liens presently attached. The lienors have failed to establish that any surplus will remain after the completion of the work, and it cannot be presumed that the work can be completed for the subcontract price. Brainard v. County of Kings, supra; Landani v. Vulcan Eng. Co., 70 Misc. Rep. 385, 388, 389, 128 N. Y. Supp. 922.

On the contrary, the evidence is that it will cost an amount highly in excess of the subcontract price, estimated at $26,163, to complete the work covered by the subcontract, which the contractor is bound to do under the terms of its contract with the state.

It also appears that the contractor has further been damaged by reason of removal of spoil dropped in the canal, which had been

certified as placed on the bank by the subcontractor. The state paid the contractor at the contract price for doing this work, but it cost the contractor $2,610.82 more than was allowed by the state, and the contractor is entitled to deduct this sum from the amount certified as earned by and unpaid to the subcontractor.

Payments to laborers of the subcontractor were made by the contractor to the amount of $3,829.29 on February 28, 1910, after certain of the liens had been filed.

[9] The contractor agrees with the state that all workmen employed by him *or any subcontractor* upon the work shall be paid not less than the prevailing rate of wages, "and that each such laborer, workman or mechanic shall be paid such wages." The contractor further agrees that the contract may at the option of the state be declared void, if it or any subcontractor fails to comply with this provision of the contract. The contractor was therefore bound to pay the laborers of the subcontractor their wages, and it was entitled to appropriate to this purpose moneys earned by the subcontractor and unpaid.

[10] While materialmen and workmen have no lien upon or equity in money due or paid under a building contract until they have filed their liens pursuant to the lien law (Mack v. Colleran, 136 N. Y. 617, 32 N. E. 604), payments to laborers take precedence at least over liens filed subsequent to February 28, 1910.

As it conclusively appears that nothing was due to the subcontractor and unpaid when the liens were filed, and as the lienors have failed to establish that any sum will ever become due to the subcontractor out of the sums earned and unpaid, they have failed to establish their liens, and their recovery would be limited to a personal judgment against the Rochester Construction Company in each case, under section 54 of the lien law, were it not for the discharges of certain of the liens by a deposit of money or the giving of an undertaking by the contractor pursuant to section 21, subdivs. 4, 5, of the lien law, the material portions of which read as follows:

"Sec. 21. Discharge of liens for public improvement. A lien against the amount due or to become due a contractor from the state or a municipal corporation for the construction of a public improvement may be discharged as follows: * * * (4) By the contractor depositing with the Comptroller of the State or the financial officer of the municipal corporation, or the officer or person with whom the notice of lien is filed, such a sum of money as is directed by a justice of the Supreme Court, which shall not be less than the amount claimed by the lienor, with interest thereon for the term of one year from the time of making such deposit, and such additional amount as the justice deems sufficient to cover all costs and expenses. The amount so deposited shall remain with the Comptroller or such financial officer or other officer or person until the lien is discharged as prescribed in subdivision one, two or three of this section. (5) Either before or after the beginning of an action by a contractor executing an undertaking with two or more sufficient sureties, who shall be freeholders, to the state or the municipal corporation with which the notice of lien is filed, in such sums as the court or a judge or justice thereof may direct, not less than the amount claimed in the notice of lien, conditioned for the payment of any judgment which may be recovered in an action to enforce the lien."

[11] It is contended that, by reason of such deposits and undertakings, the lienors are entitled to have their personal judgments

paid. The question has recently been before the Court of Appeals. Milliken Bros., Inc., v. City of New York, 201 N. Y. 65, 94 N. E. 196. Cullen, C. J., writing the opinion of the court, says:

"The appellants (other than McNulty) contend that by reason of the deposit to discharge their liens they are entitled to have the claims for which they recovered personal judgments paid out of the fund, even if their claims were invalid. We agree with the majority of the Appellate Division that this contention cannot be upheld. Subdivision 4 of section 21 of the lien law provides for the discharge of a lien by the deposit of a sufficient sum of money. In such case the sum deposited is a substitute for the fund to which the lien attached until the deposit was made. A valid lien on the primary fund must, therefore, be established to justify payment out of the deposit. The argument of the appellants is that subdivision 5 provides for the discharge of a lien by the execution of a sufficient undertaking conditioned for the payment of any judgment which may be recovered in an action to enforce the lien; that section 3412 of the Code of Civil Procedure authorizes a recovery by a lienor of a personal judgment for his claim when he fails to establish a valid lien; that, had an undertaking been given to discharge the lien, the sureties would have been liable for the personal judgment; and that the liability should be the same whether the lien is discharged by a deposit or by the execution of an undertaking. In Hawkins v. Mapes-Reeve Constr. Co., 82 App. Div. 72, 81 N. Y. Supp. 794, the contention of the appellants so far as it relates to an action on an undertaking was upheld by a divided court. The case was affirmed by this court (178 N. Y. 236, 70 N. E. 783), but on the ground that the claimants' liens were valid. The court declined to pass upon the question on which the case had been decided in the Appellate Division, nor is it necessary to determine that question now. It is sufficient to say that, as the various provisions of the lien law relating to the discharge of liens are directed towards the substitution of the fund or undertaking in lieu of the thing against which the lien attached, the substituted liability should not be greater than the original liability, unless the direction of the statute is clear and express. No such direction relating to the deposit of moneys is to be found in the statute, whatever may be the case as to undertakings."

This is conclusive against the lienors so far as the liens discharged by deposit are concerned.

[12] So far as the liens discharged by undertaking are concerned, this court might be bound by authority to hold that the undertaking is security for any personal judgment obtained herein against the *contractor who executed it* (Hawkins v. Mapes-Reeve Constr. Co. 82 App. Div. 72, 81 N. Y. Supp. 794, cited supra); but to hold such contractor liable on the undertaking given by it for a personal judgment obtained *against the subcontractor* would make the substituted liability greater than the original liability and would permit the discharge of the lien by an undertaking only at the cost of admitting its validity. I find no clear and express direction of the statute to this effect, although the undertaking is "conditioned for the payment of *any* judgment which may be recovered in an action to enforce the lien." The contractor seeks to obtain the discharge of the lien and to substitute a personal liability in place of the fund; but why he should be required to secure the payment of a personal judgment obtained against another party to the action in order to discharge the lien is not clear. Indeed, Judge Andrews, at Special Term (Casey v. Connors Bros. Cons. Co., 53 Misc. Rep. 101, 103 N. Y. Supp. 1103), declining to follow the Hawkins Case, supra, says:

"A judgment 'in an action to enforce a lien' does not mean a judgment that no lien exists, but that the plaintiff is entitled to a money judgment because of breach of contract on the part of some defendant. It means a judgment that a valid lien exists."

The question is an open one, but the obvious inconsistence of distinguishing between the effect of a discharge of lien by deposit of money under subdivision 4, and a discharge by giving an undertaking under subdivision 5 in this regard, reduces the proposition almost to an absurdity. In this case such a distinction would defeat the plaintiffs' recovery, although their notices of lien are earliest in point of time, and would, at the same time, permit a recovery on the undertaking by the Erie Railroad Company, on a claim for freight, the lienability of which is doubtful and to be sustained only by the most liberal construction of the law. 27 Cyc. 44, and cases cited. Union Oil Works filed notice of lien March 22, 1910, which was discharged by deposit. Standard Oil Company filed notice of lien March 29, 1910, which was discharged by undertaking. Both claims were for oil furnished. Can it have been contemplated by the Legislature that the former should not recover on the substituted liability and that the latter should? I think that the literal terms of the statute must be construed in the light of the general purpose of the lien law, and that no recovery can be had on the undertakings herein except on a personal judgment against the principal contractor.

The lien law is "to be construed liberally to secure the beneficial interests and purposes thereof." Lien Law, § 23.

By virtue of this salutary rule, it would be held that liens may be acquired for coal and oil delivered and furnished to run machinery on the real property or public improvement (Zipp v. Fidelity & Deposit Co., 73 App. Div. 20, 76 N. Y. Supp. 386), although not actually used because of the abandonment of the work by the contractor. Sears v. Wise, 52 App. Div. 118, 64 N. Y. Supp. 1063.

In the leading case of Schaghticoke Powder Co. v. G. & J. Ry. Co., 183 N. Y. 306, 76 N. E. 153, 2 L. R. A. (N. S.) 288, 111 Am. St. Rep. 751, the court says:

"It would be difficult to suggest anything more comprehensive than the language used in the present statute. Any 'contractor, subcontractor, laborer or materialman who performs labor or furnishes materials for the improvement of real property' shall be entitled to a lien. When this language is contrasted with the specific and restricted phrases of the former statutes. it is plain that the Legislature intended to bring all labor performed or materials furnished in the improvement of real estate, no matter by what name they may be called or by what description they may be designated, within the liberal and beneficent purposes of the statute."

This makes lienable virtually all labor performed for and all materials furnished to the contractor for the improvement which do not become a part of his plant, and which do not necessarily survive the performance of the work and remain the property of the owner, and so covers virtually all the liens filed herein. But, under the New York system of mechanics' liens, a proper regard for the protection of the laborer and the materialman has never gone so far as to establish the rule that they may recover more from the owner than is due or becomes due from him to the contractor under the

contract. They assert the claims of the contractor against the property, not their own claims. They are allowed, by a species of equitable subrogation, to claim, indirectly, what the contractor would otherwise be entitled to claim under his contract, directly, nothing more. 27 Cyc. 89.

My conclusion therefore is that, until the work covered by the subcontract is completed, it cannot be determined, under the provisions of such contract, whether the subcontractor is entitled to receive any part of the amount earned by it and now unpaid, on its contract; that the lienors have therefore failed to establish their liens upon any amount due or to become due under the subcontract; that the substituted liability incurred by deposit of money or giving of undertakings for the discharge of liens is no greater than the original liability; that the lienors are therefore limited to personal judgments against the Rochester Construction Company.

"All sections of the lien law (Laws 1909, c. 38) relative to liens under contracts for public improvements and the foreclosure thereof have been repealed at this session of the Legislature and a new plan enacted for securing claims for labor and materials on public works (Laws 1911, c. 450, in effect June 26, 1911), but this action is not affected thereby. General Construction Law (Laws 1909, c. 27 [Consol. Laws 1909, c. 22]) § 94."

Decision accordingly.