### THIRD DEPARTMENT, MAY, 1935.

LACKAWANNA STEEL CONSTRUCTION CORPORATION, Respondent, v. THE STATE
OF NEW YORK, Appellant.

(Claim No. 23466.)

One Anderson had a contract with the State of New York for the building of a
highway. Under the contract it was necessary to build a bridge and to have a
considerable quantity of fabricated steel and railing. Anderson sublet this item
of his contract to the claimant herein, by which the claimant agreed to fabricate
the steel and erect it upon foundations to be supplied by the general contractor,
the general contractor to pay fifty per cent of the cost of the materials upon their
delivery upon the site. The materials were fabricated by the claimant, consigned
to itself at the nearest railroad point to the proposed site, were transported by
the claimant's servants to the site and placed upon the side of the road. The
foundations were not ready and the general contractor paid no part of the price
of these materials.

In an estimate made shortly afterwards the State allowed the general con-
tractor for part of the steel thus placed near the site. The general contractor
later going into bankruptcy, the State relet the contract, authorizing the con-
tractor, after notice, to use the steel in question, claiming title to it. The claimant
has recovered judgment for the purchase price of the steel in the Court of Claims
against the State. Judgment affirmed, with costs.

Hill, P. J., Rhodes, Crapser and Heffernan, JJ., concur; Bliss, J., dissents, with
an opinion.

BLISS, J. (dissenting). On September 10, 1932, E. J. Anderson entered into a
contract with the People of the State of New York to furnish all the materials
for and to construct the Wells-Weavertown Parts 1 and 2 Highway No. 8428
in Hamilton and Warren counties in accordance with plans and specifications
referred to in and made a part of the contract, which improvement included the
erection of a steel bridge. This contract provided for monthly estimates and
payments by the State to the contractor as the work progressed for work satis-
factorily performed and also that the State might " provide partial payment of
material delivered upon the work during the winter months." On September
14, 1932, the Lackawanna Steel Construction Corporation agreed with the con-
tractor to manufacture and erect complete the bridge on this highway, " all as
per plans and specifications prepared by New York State Department of Public
Works. * * *

" Terms: 50% of contract price to be paid on delivery of materials to the job
Balance to be paid on completion of erection."

In January and February, 1933, the subcontractor shipped to itself by rail
certain of the structural steel and metal railing for the bridge and then hauled
it overland by truck and delivered it on the work. On February 20, 1933, the
State estimated and paid to the contractor a partial payment on account of this
material. In April, 1933, the contractor defaulted on his contract with the State

and it was canceled without his having paid the subcontractor for the material so delivered. By notice in writing dated May 4, 1933, the subcontractor notified the State that it claimed title to this material, and that any reletting of the principal contract must be subject to its interest, and "upon the express provision for the full reimbursement and payment" to it "of the reasonable value and agreed price thereof." On August 2, 1933, one day before the scheduled reletting, the subcontractor served upon the State another notice in writing that it elected to repossess the material from the site of the work pursuant to the provisions of section 39-c of the Lien Law. The contract was relet and the new contractor directed by the State to use the material in the work, which he did. The subcontractor filed claim and has obtained judgment against the State for the value of this material.

The subcontractor and the State were not dealing as strangers. The very term "subcontractor" indicates the contrary and refutes the lack of privity. The subcontract referred specifically to the principal contract and provided for performance by the subcontractor in accordance with the plans and specifications which were a part of the principal contract. The subcontractor thereby became not only charged with notice of all of the conditions of the principal contract (Pound, J., in *Upson* v. *United Engineering & Contracting Co.*, 72 Misc. 541; *Baldwin Locomotive Works* v. *Hines Lumber Co.*, 189 Ind. 189; 125 N. E. 401), but also bound by these conditions. (*Knight & De Micco, Inc.*, v. *Lewis*, 229 N. Y. 530; *Szemko* v. *Weiner*, 176 App. Div. 620; *Lehigh Portland Cement Co.* v. *City of Poughkeepsie*, 179 id. 368.) It made delivery of the material at the work with this knowledge and subject to the conditions of the principal contract. It was doing that which it had agreed to do for the contractor and knew that upon such delivery the contractor could obtain payment from the State for the material. Its delivery was the delivery of the contractor to the State. The State was entitled to rely upon its contract and pay the contractor for materials so delivered during the winter months. Upon such delivery and payment the materials became the property of the State. That the subcontractor had made delivery and parted with possession is conceded in its notice of election to repossess dated August 2, 1933.

Nor was the subcontractor entitled to repossess these materials under the provisions of section 39-c of the Lien Law. That section refers to materials delivered for and not used on a public improvement which is abandoned before the completion thereof or which is completed. This public improvement was not abandoned. That could be done only by the municipality which instituted it. A failure by one contractor to complete the public improvement does not establish an abandonment of such improvement. This public improvement was actually completed and the materials were used in it. Consequently they were not the subject of repossession under this section.

The judgment should be reversed upon the law and the claim dismissed. [152 Misc. 604.]