JOSEPH T. RYERSON & SON, INC., Respondent, *v.* A. V. O'DONNELL, INC., and FABIAN SECURITIES, INC., Defendants, Impleaded with JACOB SHAPIRO, Doing Business under the Firm' Name and Style of M. SHAPIRO & SON, Appellant, and MARK AVRAMO, as Trustee in Bankruptcy of A. V. O'DONNELL, INC., Substituted as a Party in Place of the Defendant A. V. O'DONNELL, INC., Defendant.

Third Department, December 29, 1937.

*Benjamin McClung* [*Louis Rosenberg* and *Herbert M. Rosenberg* of counsel], for the appellant.

*Newman, Hauser & Teitler* [*Samuel L. Teitler* of counsel], for the respondent.

RHODES, J. Plaintiff has been awarded judgment against defendant Shapiro for the sum of $1,844.50, with interest, for the wrongful detention of 102 4/5 tons of steel reinforcing rods, with costs and an extra allowance of five per cent of the sum awarded as damages.

The brief for the appellant states that for the purposes of the appeal appellant accepts all of the salient facts found by the referee, but urges that the theory upon which plaintiff was permitted to recover is untenable and unsupported by law.

Defendant Shapiro had contracts for the construction of two theatres, one in Albany and one in Schenectady. The owners are not involved and not parties to this action. Defendant Fabian Securities, Inc., guaranteed performance by the owners, and the complaint has been dismissed as to it.

Shapiro sublet to defendant A. V. O'Donnell, Inc., a portion of the work and thereupon O'Donnell entered into two contracts with plaintiff, by which plaintiff agreed to furnish steel reinforcement rods for the work for the sum of $11,300, plus a small additional charge for cutting and shaping rods, the contracts reserving title in plaintiff until payment in full to it. These contracts were not filed. All of the reinforcing rods called for by the terms of these contracts were delivered upon the construction sites, but plaintiff has been paid only $3,500 on account.

On April 2, 1931, O'Donnell applied to Shapiro for an advance payment of $2,800 over and above the amount then due him under his contracts. Shapiro hesitated to make the advance, whereupon O'Donnell called attention to the steel reinforcing rods upon the sites of the work, stated that the rods were his and that they would furnish ample security for the advancement.

There were provisions in Shapiro's contracts with O'Donnell authorizing Shapiro to use any materials belonging to O'Donnell on the premises in completing the work in case of O'Donnell's default.

In reliance upon this provision in his contract with O'Donnell and the statement of O'Donnell that the rods were his, and having no knowledge of the reservation of title in plaintiff's contracts with O'Donnell, Shapiro advanced to O'Donnell on April second, for payroll $2,800 in excess of the amount due him under the contracts.

The next day O'Donnell abandoned the job and on April 14, 1931, a conference relative to the matter was held at which plaintiff, Shapiro and O'Donnell were present or represented, and Shapiro then for the first time was informed of plaintiff's claim of ownership of the rods by reason of the reservation of title under the conditional sales contracts between plaintiff and O'Donnell. The plaintiff then and there demanded a return of the unused rods and asked permission to remove the same, which demand and request were refused by Shapiro and O'Donnell. Later Shapiro used these rods to complete the buildings. They were all incorporated into the structures and became realty, and several months after the buildings were finished and on April 5, 1932, this action was commenced.

The referee found that when Shapiro advanced $2,800 in reliance upon O'Donnell's apparent ownership of the rods, the transaction constituted a pledge; that after repayment to Shapiro of the sum of $2,800 the balance of the value of the chattels belonged to plaintiff. He found that there were 102 4/5 tons of rods on the sites at the time of the wrongful detention, then worth at least $45.18 per ton, and that the value of similar rods at the time of the trial was at least $8 per ton more than at the time of the demand and detention. The value of the steel was fixed at the sum of $4,644.50, from which Shapiro was authorized to deduct $2,800, and the balance of $1,844.50, with interest thereon from April 14, 1931, was awarded to plaintiff by the decision and judgment appealed from.

Appellant's principal objection is that the transaction did not constitute a pledge, but that it constituted a sale by which he became a purchaser in good faith and for value. His argument is to the effect that by section 61 of the Personal Property Law a purchaser includes a mortgagee and pledgee; that even as a pledgee he is now clothed with complete title as a purchaser.

The Uniform Conditional Sales Law (Pers. Prop. Law, art. 4) certainly does not attempt to change the terms or the character of the title which a so-called purchaser acquires; it simply confirms and validates his rights according to the terms of his agreement. It does not attempt to transform a pledge and the rights and obligations of that relationship into the wholly different transaction of a sale to a vendee with an absolute and unqualified title.

' At the time Shapiro received notice of plaintiff's claim of ownership, unquestionably the plaintiff did have title to the unused rods, subject to the $2,800 which Shapiro had advanced. (*Lackawanna Steel Construction Corp.* v. *State of New York*, 244 App. Div. 831; affd., 269 N. Y. 552.)

In the absence of special agreement a pledgee is not at liberty to appropriate the pledged property. It is his duty to demand payment or to sell the pledge after notice to those having equities therein. (*Markham* v. *Jaudon*, 41 N. Y. 235; *Gruman* v. *Smith*, 81 id. 25; *Ogden* v. *Lathrop*, 65 id. 158; *Stenton* v. *Jerome*, 54 id. 480; *Farwell* v. *Importers, etc., Nat. Bank*, 90 id. 483; *Cass* v. *Higenbotam*, 100 id. 248; *Cutting* v. *Marlor*, 78 id. 454.)

The most that Shapiro could lawfully do was to appropriate of the rods a quantity not exceeding in value $2,800, the amount advanced by him on the security of the chattels.

Appellant further objects to the judgment because it awards damages for wrongful detention, whereas the complaint did not specifically demand damages therefor, the demand of the complaint

being that the defendants be adjudged to deliver to the plaintiff the unused bars, " and in case delivery thereof cannot be had, that plaintiff may have judgment to recover the value thereof." He further objects that replevin is not maintainable for the reason that the steel bars have ceased to exist as personalty and have become realty.

The referee found " that at the date of trial of this action said steel is of no value and has become an integral part of said real property and cannot be removed without the destruction of said buildings;" but he held that as the value of similar steel had increased and the incorporation into the building was the result of the wrongful act of Shapiro, he could not be heard to complain at being assessed the value of similar steel bars; that such bars shipped and ready for use were certainly worth to him the amount with which he had been charged.

The objections of the defendant as to the form of the demand and the form of the judgment are technical. The complaint is very comprehensive in its statement of the facts, the pleadings set forth the true situation and no one could have been misled as to the issues which were being tried.

Section 106 of the Civil Practice Act requires that an error in the ruling of the trial court must be disregarded if a substantial right of any party shall not thereby be affected. Under the situation here presented it cannot be said that any substantial right of the appellant has been invaded respecting the matters referred to.

It is claimed by the appellant that there was no competent proof of the quantity of unused bars in Shapiro's possession on April 14, 1931. It is unnecessary to discuss this question at length. There was proof in the record as to the quantity on the sites on April third, and also proof tending to show the amount on hand on April fourteenth. The finding of the referee has support in the evidence.

The final objection raised by the appellant is that the referee had no authority to grant an extra allowance; that it could be granted only by the court, citing *Pinsker* v. *Pinsker* (44 App. Div. 501); *Ongley* v. *Marcin* (214 id. 455); *DiSilvestro* v. *Sons of Italy Grand Lodge* (228 id. 14). The two later cases were based upon the language of section 1513 of the Civil Practice Act, which is to the effect that the court, in its discretion, may award an extra allowance. Since the decision of those cases, however, section 117 of the Judiciary Law, added by chapter 854 of the Laws of 1935, has enlarged the powers of an official referee. It provides that as to any action referred to such referee " he shall proceed therein with the same power and authority as a justice presiding at a regular Special Term of the Supreme Court." This grant of power appar-

ently is broad enough to include the authority to award an extra allowance.

The judgment should be affirmed, with costs.

HILL, P. J., McNAMEE, BLISS and HEFFERNAN, JJ., concur.

Judgment affirmed, with costs.